OPINION
{¶ 1} Defendant-appellant Angela F. Juarez appeals from her conviction and sentence for Theft, in violation of R.C.2913.02(A). Juarez contends that the trial court abused its discretion in denying her motion for a continuance of her suppression hearing, because defense counsel was not notified of the hearing and so was not fully prepared and was not able to subpoena a necessary witness. We conclude that even if the trial court abused its discretion when it denied defense counsel's motion for a continuance for the purpose of subpoenaing a witness, the witness's subsequent testimony at trial demonstrates that the error was harmless, because the testimony of the witness, whom the trial judge found to be very credible, demonstrated that he could not have provided any testimony helpful to the defense at the suppression hearing.
 {¶ 2} Juarez contends that the trial court erred in denying her motion to suppress, because she did not knowingly and intelligently waive her privilege against self-incrimination. We conclude that Juarez was not in custody when she was interviewed by the police, and therefore, Miranda warnings were not required. We conclude that even if Juarez were deemed to have been in custody at the time of the interview with the police, the State demonstrated that the police read Juarez the Miranda
warnings and that Juarez then knowingly and intelligently waived her rights. Therefore, we conclude that the trial court did not err in denying Juarez's Motion to Suppress.
 {¶ 3} Juarez contends that the trial court erred in admitting the hearsay testimony of Detective Todd Burkett and Attorney Terry Lewis stating that Michaela Stafford told them that Juarez stole a camera from Lewis and that Stafford then sold the camera at a pawn shop in the Oregon District. We conclude that even if the trial court erred in admitting the hearsay testimony of Detective Burkett and Lewis, the evidence of Juarez's guilt is overwhelming and her conviction for Theft must be affirmed.
 {¶ 4} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 5} For a two and a half year period, Attorney Terry Lewis represented Angela Juarez in several different actions, including a divorce action. During this time, Lewis and Juarez were involved in a romantic relationship on an intermittent basis, which led to Juarez living with Lewis for a few weeks in the fall of 2002. When Juarez moved in, Lewis gave her his garage code to enter his house. Due to a conflict between Juarez and Lewis's son, Juarez moved out. Lewis and Juarez's romantic relationship ended on March 5, 2003.
 {¶ 6} In February, 2003, Lewis's Minolta 35 mm camera and accessories were allegedly stolen from inside his house. The following month, Lewis received a phone call from Michaela Stafford, Juarez's friend. Stafford told Lewis that she had information about his stolen camera and requested that Lewis meet with her. Lewis contacted the police and arranged a meeting with Stafford in which the police were present, but unseen by Stafford. At this meeting, Stafford told Lewis that Juarez stole his camera from his home because she needed money for drugs, and that Stafford pawned the camera at a pawn shop in the Oregon District. Stafford was then taken to the police station by the police to be interviewed. Stafford relayed the same information that she told Lewis to Detective Todd Burkett of the Butler Township Police Department. The next day, Detective Burkett obtained a sales receipt for a Minolta 35 mm camera and accessories at the All American Pawn Shop in the Oregon District. The sales receipt provided that the camera and accessories were sold to the All American Pawn Shop on February 3, 2003 by Micheala Stafford.
 {¶ 7} The day after the police received the information from Stafford, Juarez was scheduled to meet with Lewis at his law office to sign papers dismissing her divorce action. When Juarez arrived, Lewis contacted the police and the police arrived at Lewis's office and met with Juarez in Lewis's conference room. After informing Juarez that they were investigating a burglary at Lewis's residence, Detective Burkett read Juarez the Miranda
warnings, using a pre-interview form. Juarez waived her rights and gave a statement. Juarez initially denied that she entered Lewis's residence and stole the camera. After Detective Burkett told Juarez that he did not believe her, based on Stafford's information and the sales receipt from the pawn shop, Juarez admitted that she went to Lewis's house, entered through the garage door, and stole the camera. Juarez stated that Stafford then sold the camera to the All American Pawn Shop. At the end of the interview, Juarez was arrested for Burglary.
 {¶ 8} Juarez was subsequently indicted for Burglary, in violation of R.C. 2911.12(A)(3), a felony of the third degree. Juarez filed a motion to suppress and/or dismiss. On June 25, 2003, the trial court entered an order of appearance by the State and Juarez for a July 21, 2003 hearing on the motion to suppress. At the hearing, defense counsel indicated that she was not ready to proceed, because she had not received notice of the hearing and was not fully prepared. Defense counsel stated that due to the lack of notice, she was unable to subpoena Lewis, whom she had intended to call at the hearing. The trial court proceeded with the hearing, over defense counsel's objection, noting that the June 25, 2003 Order of Appearance indicated that all parties were given notice of the suppression hearing. The trial court also stated that the matter would be continued if it reached a point in the hearing where it appeared that Lewis's testimony would be "key."
 {¶ 9} The State then presented its only witness, Detective Burkett, who testified that he advised Juarez of the Miranda warnings and that Juarez waived her rights prior to confessing to stealing Lewis's camera. At the conclusion of the hearing, defense counsel requested a continuance to subpoena Lewis. At the trial court's request, defense counsel proffered Lewis's testimony. Defense counsel argued that Lewis was a witness to the police interview with Juarez in his conference room as well as to the professional relationship he had with Juarez at the time. The trial court denied the continuance, finding that based on the testimony given at the hearing, "Mr. Lewis' testimony would be irrelevant as to the voluntariness of the statements given pursuant to the Miranda Warnings."
 {¶ 10} After the hearing, the trial court denied Juarez's Motion to Suppress and/or Dismiss, finding that Juarez "made an informed and voluntary waiver of her Miranda Rights and all statements made subsequent to said waiver are admissible at a trial on this matter * * *." This case proceeded to a bench trial. The trial court found Juarez not guilty of Burglary, but guilty of the lesser included offense of Theft, in violation of R.C. 2913.02(A), a felony of the fifth degree. Juarez was sentenced to three years of community control sanctions. From her conviction and sentence, Juarez appeals.
 II {¶ 11} Juarez's first assignment of error is as follows:
 {¶ 12} "the trial court erred by overruling appellant's motion to suppress the statements made to the police."
 {¶ 13} Juarez contends that the trial court erred in denying her motion to suppress and presents two issues in connection with this assignment of error. Juarez first contends that the trial court abused its discretion in denying her motion to continue the suppression hearing, because defense counsel was not notified of the suppression hearing, and therefore was not fully prepared and was not able to subpoena Lewis, a necessary witness. Juarez contends that Lewis's testimony was necessary to support the suppression of her statements made to the police.
 {¶ 14} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." Statev. Unger (1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41,423 N.E.2d 1078, internal citations omitted. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. "`There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'"Unger, supra at 67, citation omitted.
 {¶ 15} At the suppression hearing, defense counsel indicated to the trial court that she was not ready to proceed, because she had not received notice of the hearing and therefore, was not fully prepared. Defense counsel stated that due to the lack of notice, she was unable to subpoena Lewis, whom she had intended to have testify at the hearing. The State argued that Lewis's testimony would be irrelevant to the issue before the court regarding whether Juarez knowingly and voluntarily waived her rights before making statements to the police. In response, defense counsel merely stated that "[w]e would disagree with that assertion." The trial court proceeded with the hearing over defense counsel's objection, noting that the June 25, 2003 Order of Appearance indicated that all parties were given notice of the suppression hearing. The trial court also stated that the matter would be continued if it reached a point in the hearing where it appeared that Lewis's testimony would be "key."
 {¶ 16} After the hearing proceeded and the State presented its only witness, Detective Burkett, defense counsel requested a continuance from the trial court to subpoena Lewis. At the trial court's request, defense counsel proffered Lewis's testimony as follows:
 {¶ 17} "Basically, that he was the attorney for Ms. Juarez, that he was present during at least portions of this questioning, that he had her to sign documents in a somewhat forceful manner during this interrogation. Questioning was proceeding during that time. And that her state of mind at that time was not of one who could knowingly and voluntarily waive her rights. This incident occurred in her own attorney's office and she was essentially banded [sic, presumably `abandoned'] by her counsel."
 {¶ 18} Defense counsel also added the following:
 {¶ 19} "In response, Mr. Lewis was a witness to this incident. He has knowledge of her age, mental acuity, her prior criminal or lack thereof of [sic] experience and whether or not there were threats or inducements used by the law enforcement officers in addition to himself."
 {¶ 20} The trial court denied the continuance, finding that based on the testimony given at the hearing, "Mr. Lewis' testimony would be irrelevant as to the voluntariness of the statements given pursuant to the Miranda Warnings." The defense then rested without presenting any evidence, and the trial court denied Juarez's Motion to Suppress.
 {¶ 21} We conclude that even if the trial court abused its discretion by denying defense counsel's motion for a continuance on the basis of the testimony proffered at the suppression hearing, the subsequent testimony of the proffered witness, at trial, establishes that the error was harmless. When defense counsel proffered Lewis's testimony, she argued that his testimony was necessary because he was a witness to the police interview with Juarez in his conference room as well as to the professional relationship he had with Juarez at the time. Detective Burkett testified that Lewis was not inside the conference room during the interview with Juarez. He testified that Lewis did not provide Juarez with any counsel regarding the charge, and that the case was not discussed with Lewis at that time. He testified that Lewis and his secretary did stop in the conference room to have Juarez sign papers regarding her divorce proceeding, but that the interview with Juarez would stop when Lewis and his secretary were present.
 {¶ 22} Lewis testified at trial that he did not speak to Juarez the morning of her interview with the police, except when Juarez asked Lewis if he was having her arrested, and he responded that he did not know and that she needed to talk to the police. Lewis testified at trial that he never went in the conference room while the police were interviewing Juarez. He testified that he believed Juarez did sign papers regarding the dismissal of her divorce action, but that he "did not personally take them in there," and that he assumed that since there was a signed document "one of the secretaries in the office took them in there and had her sign them."
 {¶ 23} From Lewis's trial testimony, which the trial court found very credible, it is clear that Lewis could not have provided testimony material to the issue of whether Juarez's statements to the police were voluntarily made. Consequently, even if the trial court erred in denying Juarez's motion for a continuance, based upon her proffer of Lewis's testimony, that error was harmless.
 {¶ 24} Juarez next contends that the trial court erred in denying her motion to suppress, because she did not knowingly and intelligently waive her right against self-incrimination.
 {¶ 25} The Fifth Amendment to the Constitution of the United States provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself." The privilege against self-incrimination is jeopardized "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning * * *." Miranda v. Arizona (1966), 384 U.S. 436,478, 86 S.Ct. 1602, 16 L.Ed.2d 694. To protect the privilege against self-incrimination, an individual "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Id. at 479. After the warnings are given, "the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement." Id. Evidence obtained as a result of an interrogation is inadmissible at trial unless the State demonstrates that the warnings were given to the individual and the individual waived their rights. Id.
 {¶ 26} "Police are not required to administer Miranda
warnings to everyone whom they question. `Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.' Only custodial interrogation triggers the need for Miranda warnings. The determination whether a custodial interrogation has occurred requires an inquiry into `how a reasonable man in the suspect's position would have understood his situation.' `[T]he ultimate inquiry is simply whether there is a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.'State v. Biros, 78 Ohio St.3d 426, 440, 1997-Ohio-204,678 N.E.2d 891, internal citations omitted.
 {¶ 27} We conclude that a reasonable person in Juarez's position would not have understood that they were in custody during the interview by the police in the conference room at Lewis's law office. Juarez was interviewed by the police in the conference room of Lewis's law office, where she had arrived that morning for a scheduled appointment to sign papers dismissing her divorce action. Detective Burkett testified that the conference room was large, and there is no evidence that the conference room door was locked during the interview. Detective Burkett testified that at one point, Juarez was allowed to use the restroom upon her request. Detective Burkett testified that prior to her waiving her rights, he did nothing to indicate to her that she was not free to leave if she did not cooperate or that she was under arrest. Detective Burkett also testified that Juarez was not formally arrested and handcuffed until the end of the interview, after she had confessed to stealing Lewis's camera.
 {¶ 28} We conclude that Juarez was not in custody when she was interviewed by the police at Lewis's law office, and therefore, Miranda warnings were not required. Even if Juarez were in custody at the time, Miranda warnings were given and Juarez waived her rights. Detective Burkett testified that when he and Director Danny Hobbs met Juarez in the conference room at Lewis's law office, they first introduced themselves to Juarez giving her their business cards and then advised her that they were there to interview her about the burglary at Lewis's residence. Detective Burkett testified that he then advised Juarez of the Miranda warnings using a pre-interview form. He testified that he read each individual right listed on the pre-interview form to Juarez and that she read along with him initialing each right after it was read. Detective Burkett testified that Juarez indicated on the form that she had completed eight years of school, but she told him she understood her rights. Detective Burkett testified that he also read Juarez the waiver of rights portion of the form as she read along, which stated as follows:
 {¶ 29} "The above statement of rights has been read to me. I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."
 {¶ 30} Juarez signed the waiver of rights. Detective Burkett testified that Juarez gave no indication either verbally or nonverbally that demonstrated that she did not understand her rights even though she told him she did. Detective Burkett testified that prior to him reading Juarez her rights and her waiving them, he did not make any statements, threats, or promises regarding the waiver.
 {¶ 31} We conclude that even if Juarez was in custody at the time of the interview, the State demonstrated that the police read Juarez the Miranda warnings and that Juarez then knowingly and intelligently waived her rights. We also note that although Juarez contends that the police did not inform her that Lewis did not represent her in the matter, there is nothing in the record to indicate that the police were aware of Juarez's belief that Lewis represented her nor did they encourage her to believe that Lewis represented her.
 {¶ 32} We conclude that the trial court did not err in denying Juarez's Motion to Suppress.
 {¶ 33} Juarez's first assignment of error is overruled.
 III {¶ 34} Juarez's second assignment of error is as follows:
 {¶ 35} "The trial court erred by allowing inadmissible hearsay evidence."
 {¶ 36} Juarez contends that the trial court erred in admitting the hearsay testimony of Detective Burkett and Lewis stating that Michaela Stafford told them that Juarez stole the camera from Lewis and that Stafford then sold the camera at a pawn shop in the Oregon District. Juarez contends that when the hearsay testimony is found inadmissible and her statements made to the police are suppressed, the State failed to provide sufficient evidence of her guilt.
 {¶ 37} The State contends that the trial court did not err in admitting the hearsay testimony of Detective Burkett and Lewis, because the statement-againstpenal-interest exception to the hearsay rule is applicable. The State further argues that even if the trial court did err in admitting the hearsay testimony of Detective Burkett and Lewis, the error is harmless.
 {¶ 38} At trial, Detective Burkett and Lewis both testified, over defense counsel's objection, that Michaela Stafford told them that Juarez stole Lewis's camera. Detective Burkett and Lewis also testified that Stafford told them that she sold the camera Juarez stole from Lewis at a pawn shop in the Oregon District. Although Stafford was subpoenaed, she did not appear to testify at trial.
 {¶ 39} We conclude that even if the trial court erred in admitting the hearsay testimony of Detective Burkett and Lewis, the error is harmless in view of the overwhelming evidence of Juarez's guilt represented by her confession, corroborated by the pawning of Lewis's camera, evidenced by a receipt. Detective Burkett testified that Juarez confessed to stealing Lewis's camera. Detective Burkett testified that Juarez admitted that she went to Lewis's house, entered through the garage door, and stole the camera. Detective Burkett testified that Juarez stated that Stafford then sold the camera to the All American Pawn Shop.
 {¶ 40} Steve Brown, the owner of the All American Pawn Shop, corroborated Juarez's admissions, in part, when he testified that Stafford sold a 35 mm camera and attachments to his shop. A sales receipt providing that the camera and accessories were sold to the All American Pawn Shop by Stafford on February 3, 2003, was also admitted into evidence.
 {¶ 41} In addition, Lewis testified that he did speak to Juarez on one occasion after her interview with the police at his law office. Lewis testified as follows:
 {¶ 42} "Q. Okay. Since that interview of Ms. Juarez in your office on the 12th of March, have you talked to her at all since then?
• * *
 {¶ 43} "THE WITNESS: She called me on one occasion and we had a brief conversation.
 {¶ 44} "Q. Do you remember when that was roughly?
 {¶ 45} "A. It would have to have been approximately [sic] first week of April of this year.
 {¶ 46} "Q. Did you discuss your camera?
 {¶ 47} "A. Yeah.
 {¶ 48} "Q. What did she say about your camera?
 {¶ 49} "A. She apologized and told me she was sorry."
 {¶ 50} At no point has Juarez recanted her confession or contended that she did not confess to stealing Lewis's camera. In her closing argument, defense counsel argued, successfully, that Juarez did not commit the crime of Burglary, because she did not trespass onto Lewis's property, but she did not contest the fact that Juarez stole the camera.
 {¶ 51} Given the overwhelming evidence of Juarez's guilt, we conclude that any error in the admission of hearsay statements by Stafford is harmless.
 {¶ 52} Juarez's second assignment of error is overruled.
 IV {¶ 53} Both of Juarez's assignments of error having been overruled, the judgment of the trial court is affirmed.
Brogan and Young, JJ., concur.